```
                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF MARYLAND


UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
    vs.                         )
                                ) CRIMINAL NO.: JKB-16-0086
DONTAE SMALL,                   )
                                )
        Defendant.              )
                                )
_____)


            Excerpted Transcript of Proceedings
           Before the Honorable James K. Bredar
              Tuesday, October 17th, 2017
                  Baltimore, Maryland


For the Plaintiff:

    Paul A. Riley, AUSA
    Sandra Wilkinson, AUSA


For the Defendant:

    Andrew R. Szekely, AFPD
    Laura Ginsberg Abelson, AFPD


Also Present:  Special Agent Autumn Brown, FBI
```

---

Christine T. Asif, RPR, FCRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland 21201

```
 1                    EXCERPTED PROCEEDINGS
 2              (10:08 a.m.)
 3              THE COURT:  Good morning.  Be seated, please.  Good
 4   morning Mr. Riley, Mr. Szekely, we're here to continue our
 5   trial with the presentation of opening statements.  I take it
 6   that the government's ready to proceed this morning?
 7              MR. RILEY:  Yes, Your Honor.
 8              THE COURT:  As is the defendant?
 9              MR. SZEKELY:  Yes, we are Your Honor.
10              THE COURT:  And the defendant is present.
11              THE DEFENDANT:  Yes, sir.
12              THE COURT:  Before we start, I want to make a brief
13   record on something and then hear counsel's views.  After the
14   jury was assembled in the jury room this morning, in
15   anticipation of coming into the courtroom to hear opening
16   statements, the courtroom deputy clerk was approached by juror
17   No. 11, and then juror No. 5 joined in the discussion.  And my
18   understanding from a discussion with my courtroom deputy clerk
19   is that juror No. 11 expressed concern that when that juror
20   was departing the jury room last night that certain
21   unspecified person or persons were quote, watching, close
22   quote, him or her.  Juror No. 5 joined in the expression of
23   that concern.
24              The courtroom deputy under my instruction and
25   supervision responded only by indicating that if they had any
```

 1   such concerns going forward they should express them to the
 2   courtroom deputy or to any of our court staff, to include our
 3   court security officers, and to point out whatever
 4   circumstance it might be that is making them uncomfortable.
 5   But beyond that, there was no elaboration and the matter was
 6   left alone.
 7           Beyond that, outside the knowledge and hearing of
 8   the jury, I have made arrangements with the Marshals to ensure
 9   that we do have a court security officer on post outside the
10   courtroom door and outside the jury room door, just generally
11   present, observing all people who are present there and the
12   circumstances and so forth, as the jury moves in and out of
13   the jury room.
14           Does the government have any reaction to the record
15   that I have just made, Mr. Riley?
16           MR. RILEY: No, Your Honor. The measures appear to
17   be more than sufficient, Your Honor.
18           THE COURT: Mr. Szekely, any reaction, concerns,
19   anything else you want to place on the record?
20           MR. SZEKELY: No issue at all with the Court's
21   remedy or how the Court's going to proceed as we go forward.
22   I have sort of two points to briefly put on the record. One
23   this is, given some of the evidence that's going to be coming
24   into this trial, regarding what the government may term as Mr.
25   Small's attempts at obstructing justice, this is, I think

1   troublesome, if sort of stuff outside of the courtroom that is
2   beyond the control of anyone at this table is happening, that
3   could effect that.  And I do think it's sort of much ado about
4   nothing in the end.
5        My other concern is whether the courtroom deputy had
6   instructed these two jurors to not discuss that with any other
7   jurors.  So I'm worried are they back there now talking about
8   what happened when they left yesterday.  Now we've got 16
9   people back there now worried about something.  That's our
10  other concern.
11       THE COURT:  Well, I hear your concern.  Are you
12  making a specific request?  And as you consider what request
13  you might want to make, I think you should also think through
14  the prairie fire aspect of all of this, you know, what happens
15  when you tell people don't think about elephants?
16       MR. SZEKELY:  Correct.
17       THE COURT:  They start thinking about elephants.
18  The power of suggestion.  There's nothing that has happened
19  here that's been generated by the Court or the government, or
20  frankly, the defense side.  This is just a circumstance that
21  has evolved based on independent jurors apparent perceptions,
22  possibly misperceptions of things.  I'm not in a position
23  where I can tell the jurors that they're imagining things,
24  that nothing happened.  I have no idea.  And none of us does,
25  we weren't out there yesterday afternoon.  And the sort of

```
 1   concern that was expressed is of a pretty vague nature.  So
 2   trying to otherwise remedy it and ramp up the response in a
 3   way that the jurors would perceive that we were reacting to,
 4   it seems to me causes more harm than good.  So I'm not hearing
 5   a specific request from you.
 6            MR. SZEKELY:  There's no request.  We may at some
 7   point have a -- some sort of request for relief.  Nothing at
 8   this moment.
 9            THE COURT:  Okay.  Very good.  Goes without saying,
10   the jurors are not in the courtroom, they can't hear this.
11   All parties are instructed that it would be highly improper,
12   if not out right obstruction of justice, a federal offense,
13   for anyone to attempt to communicate directly or indirectly
14   with jurors in this case about their service, about their
15   conduct, about their actions as jurors.  And everyone's on
16   notice that this court will protect the integrity of this
17   process no matter what it takes.  Okay.
18            MR. SZEKELY:  Your Honor, can I just step back and
19   speak with my assistant, who's in the gallery for one
20   moment.
21            THE COURT:  Absolutely.
22            And also this is not set up correctly, the podium is
23   on the wrong side of the electrical box.  How are the lawyers
24   supposed to work with the cord right in front of them?  Thank
25   you.
```

```
 1                  (10:16 a.m., end of first excerpt.)
 2                  (11:51 a.m., beginning of second excerpt)
 3            THE COURT:  Are we ready for the jury?
 4            MR. SZEKELY:  Your Honor, we'd like to address one
 5   matter outside the presence of the jury.
 6            THE COURT:  Go ahead.
 7            MR. SZEKELY:  And I know Mr. Riley -- Your Honor, at
 8   this time -- Mr. Small, you can have a seat -- Your Honor, we
 9   would move, at this time, to excuse those two jurors we
10   discussed earlier today.  Jurors No. 5 and 11, and in their
11   stead seat the first two alternates.
12            The individuals who I saw, and Ms. Abelson saw when
13   we left the courtroom yesterday, were family members -- was a
14   family member of Mr. Small's, his aunt, who was asked to come
15   to court actually as a government witness.  The government may
16   or may not be calling her later in the trial, and another
17   family member who accompanied her.  So those were the only two
18   people out there.
19            It's my concern that, on behalf of Mr. Small, that
20   the jurors, based on what those two jurors said happened,
21   are -- will associate what is concerning to them with Mr.
22   Small.  And, of course, they don't know it's his aunt but we
23   do.  But they will associate those individuals waiting outside
24   Mr. Small's courtroom, no one else was in the hall, with Mr.
25   Small.  And that would, combined with the later expected
```

1  evidence the government will argue is evidence of obstruction
2  of justice, would influence their verdicts in such a way that
3  they would no longer be the fair and impartial verdicts --
4  fair and impartial jurors to which Mr. Small is entitled.
5          So the relief we're seeking, we would ask the Court
6  to excuse those two jurors, seat the first two alternates.
7  But before the jurors are formally excused, and once it's
8  confirmed the alternates will be seated, we would ask that
9  they be voir dired about what they told the other members of
10 the jury about what happened or what they saw before they're
11 formally excused.  And, again, if the Court is disinclined to
12 grant our motion to excuse those jurors, we would not ask them
13 voir dired.  We would only ask them to be voir dire in the
14 event that the Court grants our motion to excuse them and seat
15 the alternates.
16         THE COURT:  Why wouldn't the appropriate course be
17 to voir dire them first and find out if there's a problem or
18 not?
19         MR. SZEKELY:  Well, Your Honor, I think what the
20 Court said was exactly -- that we don't want to draw undue
21 attention to it if it's not needed.  I think based on the
22 record before the Court now, there's sufficient basis to
23 excuse those two jurors and then inquire further about what
24 other jurors may have learn about it.  And then we'll have to
25 see where we are.  That's where we are and that's our request

1  for relief.
2           THE COURT:  What's the government's position?
3           MS. WILKINSON:  Your Honor, there's nothing in this
4  record that suggests No. 1, that's who the jurors saw.  Or No.
5  2, that the jurors have any idea that they are related somehow
6  to Mr. Small.  They -- I don't believe his brother is going to
7  be a witness in this trial.  And there's discussions afoot
8  about the other female that was out there about stipulating as
9  to her testimony.  But more importantly, the jurors don't know
10 who those people were.  There's no record that those are the
11 people they even saw.
12          I think that the Court has handled it completely
13 appropriately at this point by putting a mechanism, because
14 there's a lot of activity in this courthouse today and will be
15 this week, of a lot of different people coming in and out.  We
16 have no idea what those jurors saw or didn't see, or how they
17 correct connected it to this case.
18          THE COURT:  Mr. Goldsmith.  Please stand, raise your
19 right hand.
20          (Courtroom Deputy Clerk sworn.)
21          THE CLERK:  I do.
22          THE COURT:  Mr. Goldsmith, how are you employed?
23          THE CLERK:  I'm a courtroom deputy clerk for the
24 U.S. district court, clerk's office.
25          THE COURT:  And how long have you so served?

```
 1              THE CLERK:  36 years.
 2              THE COURT:  And were you on duty in courtroom 3D,
 3   this courtroom, earlier today attending to your
 4   responsibilities as a courtroom deputy clerk?
 5              THE CLERK:  Yes.
 6              THE COURT:  In that regard, did you encounter the
 7   jurors before court had actually formally opened this morning?
 8              THE CLERK:  Yes.
 9              THE COURT:  Did you encounter them in the jury room?
10              THE CLERK:  Yes.
11              THE COURT:  Did you have occasion to speak to juror
12   No. 11?
13              THE CLERK:  Yes.
14              THE COURT:  Tell the Court how that conversation was
15   initiated.
16              THE CLERK:  The individual juror brought to my
17   attention her concerns regarding the fact that she had seen,
18   at the time she left for the day yesterday, individuals
19   outside the jury room, and that made her uncomfortable.
20              THE COURT:  Okay.
21              THE CLERK:  Those individuals had -- one or both
22   individuals had a cell phone.
23              THE COURT:  How did she characterize the conduct or
24   activities of the persons who gave her concern, what were
25   those persons doing?
```

```
 1              THE CLERK:  She did not specifically say, to my
 2   knowledge, she just came across uncomfortable.
 3              THE COURT:  She said that she saw them, and that
 4   made her uncomfortable.
 5              THE CLERK:  That is correct.
 6              THE COURT:  And she didn't otherwise describe what
 7   their conduct was or how they were behaving or anything?
 8              THE CLERK:  Not that I can recall.
 9              THE COURT:  She made reference to the fact that one
10   or more of them were holding cell phones?
11              THE CLERK:  That is correct.
12              THE COURT:  Did she indicate what they were doing
13   with the cell phones?
14              THE CLERK:  Did not.
15              THE COURT:  Did she indicate whether she thought
16   that she was being photographed or videoed in any way?
17              THE CLERK:  Did not have that indication.
18              THE COURT:  Okay.  Were there any other
19   communications between you and juror No. 11 on this topic?
20              THE CLERK:  No.
21              THE COURT:  Did you say anything in response to her,
22   did you attempt to provide any reassurance or dispense any
23   information whatsoever?
24              THE CLERK:  I explained to her that I would advise
25   the judge.
```

```
1              THE COURT:  Okay.  And then was there further
2    communication with juror 11 after you had advised the Court?
3              THE CLERK:  Yes.
4              THE COURT:  What did you advise?
5              THE CLERK:  I advised the juror that I spoke to the
6    judge and that there's a court security officer is posted
7    outside the courtroom.  That any further concerns that she may
8    have, please bring it to my attention.  But the Court security
9    officer wears a Navy blazer, gray slacks, has a badge for
10   their identification.  And that that's their job to monitor
11   the coming and going of individuals outside the courtroom.
12             THE COURT:  Okay.  Did you have any further
13   communication with juror No. 11 on this topic?
14             THE CLERK:  No, generally that was it.
15             THE COURT:  Did you have communication with juror
16   No. 5 on this topic?
17             THE CLERK:  Yes, I did.
18             THE COURT:  And tell me about that.
19             THE CLERK:  Juror No. 5 indicated to me that he has
20   noticed the same thing that juror No. 11 noticed.
21             THE COURT:  And did he otherwise characterize it as
22   what it was that he was noticing?
23             THE CLERK:  Not as detailed as juror No. 11.
24             THE COURT:  Okay.  And did you -- how did you react
25   to juror No. 5's statements, did you say anything in
```

```
 1   particular to him.
 2           THE CLERK:  Just the general response that I advised
 3   the judge, and basically what I just advised the Court.
 4           THE COURT:  And did you say anything else to juror
 5   No. 5 after you had advised the Court, was there any specific
 6   additional conversation with him?
 7           THE CLERK:  I think it was done collectively.
 8           THE COURT:  Okay.
 9           THE CLERK:  As a group.
10           THE COURT:  Thank you.  Mr. Goldsmith, you may be
11   seated.  And that's the conclusion of Mr. Goldsmith's
12   statement for the record.  The request of the defendant is
13   denied.
14           (11:58 a.m., end of excerpted proceedings.)
15
             I, Christine Asif, RPR, FCRR, do hereby certify that
16   the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.
17
                    _____/s/_____
18                      Christine T. Asif
                      Official Court Reporter
```